UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICK GEORGE, et al.,

        Plaintiffs,                          Case No. 1:07-cv-426

v.                                          HON. JANET T. NEFF

LOCHENHEATH PROPERTIES, et al.,

        Defendants.
_____/

**OPINION**

Plaintiffs filed this multi-count action against defendants, alleging claims under the Interstate Land Sales Full Disclosure Act (ILSFDA), 15 U.S.C. § 1701 *et seq.* (Count 1) and the Racketeer Influenced and Corrupt Organizations (RICO), 18 U.S.C. § 1960 *et seq.* (Count 8); mail fraud, 18 U.S.C. § 1341 (Count 6); and wire fraud, 18 U.S.C. § 1343 (Count 7); as well as various state law claims.[1] Pending before the Court are defendants' Motion to Dismiss the Complaint (Dkt 13), pertaining to the RICO claim, and defendants' Motion for Summary Judgment of the ILSFDA claim (Dkt 25). Having reviewed the motion briefs and extensive record, and having heard oral argument on the motions, the Court concludes that defendants' motions are properly granted.

---

[1] This case was transferred to the undersigned on August 10, 2007 pursuant to Administrative Order No. 07-091.

I. Background and Facts

This real estate development case concerns an upscale golf and housing development, "LochenHeath," a former cherry orchard overlooking Grand Traverse Bay in northern Michigan. Plaintiffs are purchasers of site condominiums in the development, which consists of an approved total of 508 condominium units. Some plaintiffs also acquired golf memberships. The development suffered financial problems and did not progress as planned. Consequently, plaintiffs could not enjoy the use of their property or realize a return on their investments as allegedly represented at the time of sale.

The present motions specifically concern the allegations of plaintiffs David George, Selwan Kesto, Patrick George, and Salim George, Jr. In March and April 2005, plaintiffs entered into contracts with LochenHeath Land Company, LLC, for the sale of site condominiums. They purchased a total of six condominium units as follows:[2]

1. Plaintiff David George purchased Unit 8 on July 25, 2005 for $355,000 and Unit 123 on July 29, 2006 for $285,000;

2. Plaintiff Selwan Kesto purchased Unit 9 on July 26, 2005 for $395,000 and Unit 122 on July 29, 2006 for $295,000;

3. Plaintiff Patrick George purchased Unit 10 on July 27, 2005 for $395,000;

4. Plaintiff Salim George purchased Unit 20 on July 20 for $250,000.

On April 30, 2007, plaintiffs filed a seventeen-count complaint, alleging federal claims under the ILSFDA (Count 1) and RICO (Count 8) and claims under the federal criminal statutes for mail fraud, 18 U.S.C. § 1341 (Count 6), and wire fraud, 18 U.S.C. § 1343 (Count 7). Plaintiffs also

---

[2] These four plaintiffs all allege similar allegations based on their purchases of the six units.

alleged state law or other claims of breach of contract (Count 2), fraudulent misrepresentation (Count 3), intentional fraud (Count 4), professional and/or realtor malpractice (Count 5), civil conspiracy (Count 9), concert of action (Count 10), violation of Michigan Consumer Protection Act, MICH. COMP. LAWS § 445.901 (Count 11), promissory estoppel (Count 12), conversion (Count 13), statutory conversion (Count 14), unjust enrichment (Count 15), intentional infliction of emotional distress (Count 16), and request for exemplary damages (Count 17). On September 28, 2007, plaintiffs filed their First Amended Complaint, alleging the same counts, but adding additional plaintiffs.[3]

Defendants initially moved to dismiss the complaint under FED. R. CIV. P. 12(b)(6). The magistrate judge directed plaintiffs to respond only as to the RICO count, on the grounds that the federal claim under ILSFDA required factual development and could not yet be decided, and the numerous state claims need not be reached if the ILSFDA and RICO claims were not viable. Following discovery, defendants filed a Motion for Summary Judgment of Count 1 (ILSFDA claim).

## II. Standard for Motion to Dismiss

In deciding a motion to dismiss for failure to state a claim under FED. R. CIV. P. 12(b)(6), the court must treat all well-pleaded allegations in the complaint as true and draw all reasonable inferences from those allegations in favor of the nonmoving party. *Lambert v. Hartman,* 517 F.3d 433, 439 (6th Cir. 2008); *Moon v. Harrison Piping Supply,* 465 F.3d 719, 723 (6th Cir. 2006). "A claim survives this motion where its '[f]actual allegations [are] enough to raise a right to relief above

---

[3] Plaintiffs are now eighteen individuals and two companies (inclusive of the original four plaintiffs), who purchased a total of sixteen properties from defendant LochenHeath Land Company, LLC in 2005 and 2006. There is no argument that the federal claims of the new plaintiffs differ in substance from those of the original four plaintiffs. Thus, the Court's disposition of the present motions pertains generally to the claims of all plaintiffs.

the speculative level on the assumption that all of the complaint's allegations are true.'" *Zaluski v. United American Healthcare Corp.,* 527 F.3d 564, 570 (6th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1959 (2007)).

"'A motion to dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations.'" *Lambert,* 517 F.3d at 439 (quoting *Golden v. City of Columbus,* 404 F.3d 950, 958-59 (6th Cir. 2005)). The factual allegations in a complaint need not be detailed, but they must go beyond mere speculation of a legally cognizable cause of action. *Lambert,* 517 F.3d at 439. "The complaint should give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *German Free State of Bavaria v. Toyobo Co.,* 480 F. Supp. 2d 958, 963 (W.D. Mich. 2007). Accordingly, the complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under a viable legal theory. *Id.*; *see also Lillard v. Shelby County Bd. of Educ.,* 76 F.3d 716, 726 (6th Cir. 1996).

### III. Counts 6 and 7 (Mail Fraud and Wire Fraud)

As an initial matter, plaintiffs' claims of mail fraud, 18 U.S.C. § 1341 (Count 6), and wire fraud, 18 U.S.C. § 1343 (Count 7), under the federal criminal statutes are properly dismissed. As defendants point out, and plaintiffs eventually conceded at oral argument, there are no private causes of action under these statutes. "Violations of these sections of the federal criminal code . . . do not give rise to private causes of action." *Morganroth & Morganroth v. DeLorean,* 123 F.3d 374, 386 (6th Cir. 1997). Because there is no private cause of action under either section, the independent

counts of mail fraud and wire fraud must be dismissed.[4]

## IV. Motion to Dismiss (RICO Claim)

Defendants seek dismissal of plaintiffs' RICO claim purusant to FED. R. CIV. P. 12(b)(6). Defendants argue that plaintiffs have failed to plead the requisite elements of a RICO claim, and moreover, plaintiffs have failed to plead their RICO claim with sufficient particularity as required by FED. R. CIV. P. 9(b). The Court finds dismissal proper on both grounds. Plaintiffs have failed to establish the elements of a RICO claim. Further, plaintiffs have failed to sufficiently plead the asserted predicate acts of fraud as a basis of their RICO claim. Moreover, plaintiffs have not shown that these deficiencies could be cured by a second amendment of their complaint.

Plaintiffs alleged their RICO claim based on fraud, wire fraud, and mail fraud under 18 U.S.C. §§ 1962(a) and (c). Their complaint states in relevant part:

### Count VIII

\* \* \*

    129. Defendants Johnson, Lang, Grady, Krakow, Maitland, Pinnacle and LochenHeath were engaged in racketeering activity to the extent that they participated in or more [sic] acts involving fraud, wire fraud and mail fraud. 18 U.S.C. 1961.

    130. Two predicate acts constituting a pattern of racketeering activity have occurred within a ten year period, as described above.

    131. Defendants received income and profits, directly and indirectly, from a pattern of racketeering activity including the money derived from the sale of real property to Plaintiffs under false pretenses and fraud, and that a part of the proceeds

---

[4] To the extent that plaintiffs assert that their claims for wire fraud and mail fraud were pled as predicate acts in support of their RICO claim, they will be addressed in that context.

>were used to further their scheme and enterprise which was engaged in the activities which affect interstate commerce. 18 U.S.C. 1962(a).[5]
>
>     132. Defendants were associated with an enterprise, or otherwise constituted an enterprise, engaged in, or the activities which affect, interstate commerce, to conduct or participate, directly and/or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.  18 U.S.C. 1962(c).

Compl. ¶¶ 129-132.

To state a RICO claim under subsection (c), plaintiff must plead the following elements: "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"[6] *Moon,* 465 F.3d 719, 723 (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496 (1985)); *see also Paycom Billing Servs., Inc. v. Payment Res. Int'l,* 212 F. Supp. 2d 732, 735 (W.D. Mich. 2002). Plaintiffs argue that they have met the requirements for pleading a RICO claim.  In their Response Brief, plaintiffs devote considerable argument to specific conduct by defendants that supports their RICO claim.[7]  In short, plaintiffs allege that John Land and Dave Johnson and their associates/employees misled plaintiffs and other purchasers on several occasions, through statements and representations regarding the LochenHeath property development, the amenities and features, its current value, and the future value of the development, the property and the individual lots (Pls.

---

[5] Plaintiffs' First Amended Complaint merely added the phrase "and Additional Plaintiffs" to the RICO allegations (Am Compl. ¶¶ 214-217).

[6] Plaintiffs assert in their Response Brief, p. 5, that defendants engaged in a pattern of racketeering activity in violation of 15 U.S.C. § 1962(c) and that defendants conspired to do so in violation of 15 U.S.C. § 1962(d).  However, as defendants point out, plaintiffs' complaint alleged violations of subsections (a) and (c), not (c) and (d).  The Court addresses plaintiffs' claim based on the parties' arguments.  Regardless, any claim under subsection (d) fails for the same reason that a claim under subsection (c) fails.

[7] Plaintiffs have attached to their Response Brief several affidavits to support their factual allegations.  Defendants argue that these affidavits are not "pleadings" and do not remedy the deficiencies in plaintiffs' RICO allegations. Regardless of the propriety of the supporting affidavits, they do not change the result regarding dismissal.

Resp. Br. 5). While plaintiffs' imprecise framing of its RICO case makes any specific reasoned application of the law difficult, the burden is not on the Court to reformulate plaintiffs' generalized and conclusory allegations in order to precisely reject them. Plaintiffs' allegations of fraudulent conduct simply do not equate to the type of collusive activity prohibited by RICO.

First, plaintiffs have failed to establish the existence of a RICO "enterprise." A RICO enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). A RICO enterprise cannot merely consist of the named defendants, and a RICO enterprise alleged as an association-in-fact must be pled as existing separately from the defendants' activity. *Bavaria,* 480 F. Supp. 2d at 967-68; *Durant v. ServiceMaster Co.,* 159 F. Supp. 2d 977, 981-82 (E.D. Mich. 2001). Further, there must be some sort of chain of command or hierarchy. *Bavaria,* 480 F. Supp. 2d at 967. Plaintiffs argue merely that Johnson's and Lang's "repeated representations and collusory actions" *constitute an enterprise and common scheme* to defraud plaintiffs, in violation of RICO (Pls.' Resp. Br. 9). This is insufficient to demonstrate a RICO enterprise.

Moreover, the enterprise and the alleged pattern of racketeering cannot have a singular existence. *See United States v. Turkette,* 452 U.S. 576, 583 (1981) (existence of an enterprise is shown "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit," while a pattern of racketeering activity is shown by "evidence of the requisite number of acts of racketeering committed by the participants in the enterprise.") "That is, the mere commission of some felonies by a few persons cannot constitute an 'enterprise' if there is no other infrastructure between them in support of a continuing relationship."

*Robinson v. Kidder, Peabody & Co., Inc.,* 674 F. Supp. 243, 246 (E.D. Mich. 1987). The racketeering pattern alleged by the plaintiffs cannot be the only unifying component of the enterprise. *Id.* at 246-47. Here, plaintiffs have essentially alleged that defendants' collusive activity in LochenHeath constitutes both a common scheme and an enterprise, which does not establish a valid RICO claim.

Additionally, to the extent that plaintiffs request that the Court use the wire and mail fraud allegations in their complaint as the predicate acts of "racketeering activity," these allegations are insufficient to cure the deficiencies in plaintiffs' RICO claim. Where a plaintiff alleges mail fraud and wire fraud as the "predicate acts" of the racketeering activity, the underlying fraudulent acts must be pleaded with particularity. *Paycom Billing Servs.,* 212 F. Supp. 2d at 736; *see also Gotham Print, Inc. v. American Speedy Printing Ctrs.,* 863 F. Supp. 447, 458 (E.D. Mich. 1994) (must plead with particularity the place, subject matter and the precise individual who furthered the fraudulent scheme through use of the mails or telephone).

In *Paycom Billing Servs.,* 212 F. Supp. 2d at 735-36, the court discussed the requirements for a RICO claim premised on mail and wire fraud:

> In this case the predicate acts upon which Plaintiff relies to establish racketeering activity by Defendants are wire fraud, bank fraud, and money laundering. Because Plaintiff is alleging fraud to establish racketeering activity, the allegations regarding those predicate acts must be "stated with particularity." FED. R. CIV. P. 9(b). Although the Sixth Circuit reads Rule 9(b)'s pleading requirement liberally, it still requires a plaintiff, "at a minimum, to allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Advocacy Org. for Patients and Providers v. Auto Club Ins. Ass'n,* 176 F.3d 315, 322 (6th Cir. 1999) (quoting *Coffey v. Foamex L.P.,* 2 F.3d 157, 161-62 (6th Cir. 1993)). Allegations of fraudulent misrepresentations "must be made with sufficient particularity and with a sufficient factual basis to support an inference that they were knowingly made." *Id.*

8

Plaintiffs have failed to plead the alleged racketeering activity with sufficient particularity. Plaintiffs state their mail fraud claim by alleging that defendants used the mail in a scheme to defraud plaintiffs by inducing them to purchase LochenHeath lots. Plaintiffs generally allege that defendants mailed materials containing fraudulent statements, material misrepresentations of facts, and concealment of material facts, including (1) the nondisclosure of the property taxes for each lot purchased, and (2) representations and promises that defendants Johnson, Lang, Pinnacle and LochenHeath would immediately and actively resell the lots purchased. The same allegations serve as the basis of plaintiffs wire fraud claims. These general allegations do not meet the standards referenced in *Paycom Billing Services* and are insufficient to establish the predicate acts of mail fraud and wire fraud for purposes of RICO liability.

To the extent that plaintiffs contend that they should be permitted to amend their complaint, they have failed to show any basis for amendment. Although leave to amend should be freely granted when justice so requires, FED. R. CIV. P. 15(a), plaintiffs have not shown that the elements could be established by amendment of their pleadings. In short, the circumstances of this case do not fit the criteria for an actionable claim under RICO.

### V. Standard for Summary Judgment Motion

A motion for summary judgment is properly granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The court must

view the evidence and draw all reasonable inferences in favor of the nonmoving party.[8]  *Id.* at 587-88; *Hamilton v. Starcom Mediavest Group, Inc.,* 522 F.3d 623, 627 (6th Cir. 2008).

VI. Defendants' Motion for Summary Judgment as to Count 1 (ILSFDA)

Defendants seek summary judgment of plaintiffs' ILSFDA claim.[9]  Defendants argue that they are entitled to summary judgment because the sale of the condominiums to plaintiffs is exempt from the ILSFDA.  Specifically, they claim that (1) the six units purchased by the original four plaintiffs qualify for exemption under the Single Family Residence Exception, 15 U.S.C. § 1702(b)(5), and that (2) the purchase of Units 8, 9, 10, 122 and 123 by David George, Selwan "Sal" Kesto and Patrick George fall with the Business Purpose Exemption contained in § 1702(a)(7).  Defendants contend that there is no genuine issue of material fact regarding whether the exemptions apply; accordingly, they are entitled to judgment as a matter of law.  Because the Court concludes that the Single Family Residence Exception applies in this case, the Business Purpose Exemption need not be considered.

The general purpose and provisions of the ILSFDA are straightforward.  In the early 1960s, Congress was concerned about the extensive fraud in the land sales industry and thus enacted the ILSFDA to protect purchasers and lessees via a complex system of required disclosures and prohibitions. 1 PAUL BARRON & MICHAEL A. BERENSON, FEDERAL REGULATION OF REAL ESTATE

---

[8] As defendants point out, plaintiffs' statement of the summary judgment standard is inaccurate.  Plaintiffs conflate the concept of general "materiality" with "issues of material fact."  In deciding defendants' motion, the Court adheres to the general standards for summary judgment, which are well-settled.

[9] Defendants' motion addresses the claims of only the original four plaintiffs since it was filed before plaintiffs' amended complaint.  However, there is no indication that the claims of the additional plaintiffs differ in substance from those of the original plaintiffs, and thus the instant analysis and disposition applies equally to the amended complaint.

AND MORTGAGE LENDING (4th ed. 2007), Ch. 3, *Interstate Land Sales Full Disclosure Act*, §§ 3.1, 3.3.  The ILSFDA is aimed at developers or their agents; it prohibits unlawful and misleading sales practices, requires the inclusion of particular consumer protection terms in the contract under certain circumstances, and provides a statutory cooling-off period to permit revocation of the contract.  *Id.* at §§ 3.3, 3.4.  "In general, the ILSFDA provides that a developer who sells undeveloped, subdivided land must

- Provide certain information to HUD [Department of Housing and Urban Development]
- Make certain disclosures to purchasers
- Not engage in unlawful and misleading sales practices
- Include certain provisions in sale contracts
- Provide certain revocation rights."

*Id.* at § 3.9.

Because of the complexity of the act's disclosure requirements, the ILSFDA provides a number of exemptions, either from the ILSFDA itself or the disclosure requirements, to ensure that the burden falls on the developer only where needed.  *Id.* at § 3.3.  At issue here is the Single Family Residence Exception, 15 U.S.C. § 1702(b)(5).

### A. *Single Family Residence Exception*

The Single Family Residence Exception provides an exemption for:

> the sale or lease of a lot which is located within a municipality or county where a unit of local government specifies minimum standards for the development of subdivision lots taking place within its boundaries, when--
>
> > (A) (i) the subdivision meets all local codes and standards, and (ii) each lot is either zoned for single family residences or, in the absence of a zoning ordinance, is limited exclusively to single family residences;

  (B) (i) the lot is situated on a paved street or highway which has been built to standards applicable to streets and highways maintained by the unit of local government in which the subdivision is located and is acceptable to such unit, or, where such street or highway is not complete, a bond or other surety acceptable to the municipality or county in the full amount of the cost of completing such street or highway has been posted to assure completion to such standards, and (ii) the unit of local government or a homeowners association has accepted or is obligated to accept the responsibility of maintaining such street or highway, except that, in any case in which a homeowners association has accepted or is obligated to accept such responsibility, a good faith written estimate of the cost of carrying out such responsibility over the first ten years of ownership or lease is provided to the purchaser or lessee prior to the signing of the contract or agreement to purchase or lease;

  (C) at the time of closing, potable water, sanitary sewage disposal, and electricity have been extended to the lot or the unit of local government is obligated to install such facilities within one hundred and eighty days, and, for subdivisions which do not have a central water or sewage disposal system, rather than installation of water or sewer facilities, there must be assurances that an adequate potable water supply is available year-round and that the lot is approved for the installation of a septic tank;

  (D) the contract of sale requires delivery of a warranty deed (or, where such deed is not commonly used in the jurisdiction where the lot is located, a deed or grant which warrants that the grantor has not conveyed the lot to another person and that the lot is free from encumbrances made by the grantor or any other person claiming by, through, or under him) to the purchaser within one hundred and eighty days after the signing of the sales contract;

  (E) at the time of closing, a title insurance binder or a title opinion reflecting the condition of the title shall be in existence and issued or presented to the purchaser or lessee showing that, subject only to such exceptions as may be approved in writing by the purchaser or lessee at the time of closing, marketable title to the lot is vested in the seller or lessor;

  (F) the purchaser or lessee (or spouse thereof) has made a personal, on-the-lot inspection of the lot purchased or leased, prior to signing of the contract or agreement to purchase or lease; and

  (G) there are no offers, by direct mail or telephone solicitation, of gifts, trips, dinners, or other such promotional techniques to induce prospective purchasers or lessees to visit the subdivision or to purchase or lease a lot;

15 U.S.C. § 1702(b)(5).

Defendants contend that LochenHeath meets all the requirements of subparagraphs (A) through (G). Plaintiffs respond that defendants have not met (in the order presented by plaintiffs) subparagraphs (G), (A), (B)(i), and (C). The Court does not find the circumstances cited by plaintiffs to preclude exemption.

### 1. *Limitations on Sales Techniques, Subparagraph (G)*

Plaintiffs assert that defendants offered several of the plaintiffs, and other potential purchasers, incentives and inducement to visit and/or purchase a property. Subparagraph (G) of § 1702(b)(5) requires that "there are no offers, by direct mail or telephone solicitation, of gifts, trips, dinners, or other such promotional techniques to induce prospective purchasers or lessees to visit the subdivision or to purchase or lease a lot." Citing *Hammar v. Cost Control Mktg. & Sales Mgmt., Inc.,* 757 F. Supp. 698, 701 (W.D. Va. 1990), plaintiffs assert that while there is no prohibition against advertising or promotional materials, these items cannot contain *any* inducement.

In *Hammar, id.* at 701, the court found that the developer was ineligible for the Single Family Residence Exception, stating:

> The primary reason is that a prerequisite for the exemption is that "there are no offers, by direct mail or telephone solicitation, of gifts, trips, dinners, or other such promotional techniques to induce prospective purchasers . . . to visit the subdivision or to purchase . . . a lot." 15 U.S.C. § 1702(b)(5)(G). The regulations elaborate on this requirement: "There is no prohibition against using the mails, telephone or other advertising media to promote or advertise the offering or to respond to inquiries from potential purchasers. The only prohibition is that these media cannot contain offers of gifts, trips, dinners or other inducement." 24 C.F.R. Part 1710, App. A, Subpart V(e)(2)(ii). CCM-VA cannot deny that it used advertisements and mail and telephone contact to offer dinners, trips, and travel expenses to potential purchasers. See, e.g., Advertisement Appearing in New York Daily News, submitted as Attachment One, Plaintiffs' Motion for Summary Judgment. For these reasons, the Lake Monticello lots that are involved in this suit, along with their developer, are not eligible for the Act's single family residence exemption.

Plaintiffs assert that in this case, defendants used various methods of inducements to attract

purchasers, "including dinners, trips and travel expenses." However, plaintiffs have cited "no offers, by direct mail or telephone solicitation, of gifts, trips, dinners, or other such promotional techniques to induce prospective purchasers . . . to visit the subdivision or to purchase . . . a lot." 15 U.S.C. § 1702(b)(5)(G). In particular, plaintiffs cite an email between Bill Barnes (LochenHeath salesperson) and Steve Henige,[10] in which Barnes confirmed that LochenHeath would be reimbursing Henige for his flight to Michigan for the purpose of looking at LochenHeath, and that the reimbursement was contingent on Henige's purchase of a lot (Pls. Am. Compl. Ex. S). However, the evidence indicates Henige's flight reimbursement was at his request, and was not an offer by direct mail or telephone solicitation contrary to the statutory requirements under subparagraph (G). Defendants cite the interpretory Guidelines to Interstate Land Sales Registration Program,[11] issued by HUD, which provide:

> In the promotion of the subdivision, there cannot be offers, by direct mail or telephone solicitation, of gifts, trips, or dinners or the use of similar promotional techniques to induce prospective purchasers to visit the subdivision or to purchase a lot. There is no prohibition against using the mails, telephone or other advertising media to promote or advertise the offering *or to respond to inquiries from potential purchasers*. The only prohibition is that these media cannot contain offers of gifts, trips, dinners or other inducement.

24 C.F.R. Part 1710, App. A., Part V(e)(2)(ii) (emphasis added). Thus, under the Guidelines, the response to Henige's inquiry was not a prohibited inducement.

Plaintiffs also cite another email exchange, in which Barnes described one of LochenHeath's methods of soliciting and inducing people to visit LochenHeath and purchase lots. Barnes stated that LochenHeath had paid for 15 potential buyers (Cirrus pilots) to stay at a resort and provided

---

[10] Henige is one of the plaintiffs who joined this action after the original complaint was filed.

[11] 2 FEDERAL REGULATION OF REAL ESTATE AND MORTGAGE LENDING, *supra*, Appendix 3B, Part V, *Statutory Exemptions from Registration Requiring No HUD Determination*.

14

them with several other inducements and incentives, such as dinner, golf, a wine tour, spa services and other "first class stuff" (Pls. Am. Compl. Ex. L). Plaintiffs also assert that defendants offered incentives such as payment of interest, property taxes, and association dues and membership dues for two years (Pls. Am. Compl. Ex. K[12]). Further, defendants offered discounts for closing on a lot within a certain timeframe, and created a sense of urgency in buyers by promising that the lot prices would be increasing immediately after they purchased.

As defendants point out, the only prohibition under subparagraph (G) is that the listed media cannot contain offers of gifts, trips, dinners, or other inducement. With regard to the Cirrus pilots' benefits, plaintiffs have shown no "offer" through "direct mail or telephone solicitation" or "other advertising media" "to induce prospective purchasers to visit the subdivision or to purchase a lot." Regarding their reference to other activities, plaintiffs fail to specify these activities. Plaintiffs' generalized response falls short of the requirements for withstanding a motion for summary judgment. Accordingly, plaintiffs have failed to show that defendants used prohibited inducements plaintiffs' under subparagraph (G).

2. *Subdivision must Meet all Standards and Codes, Subparagraph A*

Plaintiffs argue that the mere declarations of local officials that the development met the local municipal and ordinance requirements is insufficient to establish that the development meets all standards and codes. Contrary to plaintiffs' arguments, these declarations are proper evidence in support of defendants' motion. The declarations are not mere self-serving or conclusory statements. It is therefore plaintiffs' burden to establish contrary evidence, which plaintiffs have failed to do. In response to a motion for summary judgment, the nonmoving party must do more

---

[12] Although plaintiffs cite Exhibit K, this appears to be the subject of Exhibit M.

15

than raise some metaphysical doubt regarding the material facts; the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec.,* 475 U.S. at 586. Accordingly, plaintiffs' argument fails.

### 3. *Situated on a Paved Street or Highway, Subparagraph (B)(i)*

Plaintiffs assert that several lots are not located on a paved street or highway and although defendants obtained a surety bond, plaintiffs claim that the intent of the bond was not met. However, as defendants point out, they have submitted sworn evidence that Condominium Units 8, 9, 10 and 20 are situated on a paved street as required; thus, no completion bond is required under subparagraph (B) (Molby Dec. ¶ 5, Defs. Br. Ex. D). Further, a surety bond was posted with respect to Units 122 and 123, which is all that the statute requires (*id.* ¶ 7).

Plaintiffs also assert that despite the fact that defendants posted a surety bond, their actions in the last two to three years demonstrate that they do not intend to live up to the requirements of the bond. Plaintiffs do not show how this is germane to the statutory provisions. As defendants indicate, this argument appears to be immaterial with respect to the exemption.

### 4. *Existence of Water, Sewage, Disposal, and Electricity, Subparagraph (C)*

Plaintiffs assert that defendants have failed to extend utilities to several of the plaintiffs' properties.[13] Defendants respond that they have provided sworn testimony that sanitary sewage disposal and electricity were extended to Units 8, 9, 10, and 20; thus, no bond necessary (Molby Dec. ¶ 11, Defs. Br. Ex. D). With regard to Units 122 and 123, defendants contend that the spirit of the ILSFDA and its remedial purposes are still satisfied because the surety bond independently

---

[13] This argument is made in the context of the bond requirements. Plaintiffs do not cite subparagraph (C), even though this provision addresses utilities.

assures the extension of these services to Units 122 and 123. Molby's declaration supports defendants' assertions. Plaintiffs' arguments and supporting evidence do not establish that defendants failed to meet the requirements of subparagraph (C).

Given the above analysis, plaintiffs have provided no basis for concluding that the Single Family Residence Exception is inapplicable to the sale of the LochenHeath condominiums. Accordingly, plaintiffs' ILSFDA claim fails.

### B. *Supplemental Briefs*

In their supplemental brief, plaintiffs claim that new material facts have become known to plaintiffs, which further support their claims: (1) defendants never intended to comply with the bond requirements, (2) defendants are therefore not exempt from the ILSFDA, (3) defendants have materially breached their contracts with plaintiffs, and (4) defendants have otherwise failed to comply with the requirements of the ILSFDA. While these new facts, as evidenced in the exhibits to plaintiffs' supplemental brief, demonstrate that the LochenHeath promises did not come to fruition, and that LochenHeath may likely prove to be a bad investment in the short term, the evidence adds no support for plaintiffs' claims. Defendants are entitled to summary judgment of the ILSFDA claim.

### VII.  Plaintiffs' State Law Claims

Having disposed of plaintiffs' federal claims, the Court exercises its discretion under 28 U.S.C. § 1367(c)(3) and declines supplemental jurisdiction over the state-law claims. See *Moon,* 465 F.3d at 728 ("[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims.").

VIII.  Conclusion

For the foregoing reasons, the Court grants defendants' motion to dismiss plaintiffs' complaint with respect to the RICO claim and grants defendants' motion for summary judgment of Count 1.  A Judgment will be entered consistent with this Opinion.


DATED: September 23, 2008                             /s/ Janet T. Neff
                                                      JANET T. NEFF
                                                      United States District Judge